Thank you, Your Honor. May it please the Court, Jonathan Singer for the Amarin Appellants. The District Court's errors in this case led it to a conclusion that contradicted medical knowledge at the time of the inventions. Namely, what that the art had been unable to achieve for upwards of 30 years was nonetheless obvious to the person of ordinary skill—a treatment for severe hypertriglyceridemia—I'm going to say HTG to make everybody's life easier—that did not raise bad cholesterol and thereby raise the risk of heart disease in patients with this condition. This District Court got there by impermissibly discounting and shaping the real-world evidence of non-obviousness that Amarin presented to fit its already-found conclusion. At age 69, it weighed found secondary indicia against those it didn't find and relied on this impermissible approach to find Amarin's case weak. At age 67, it improperly discounted its finding of long-felt need because it had already found an asserted prima facie case. And at age 68, it used its prima facie case to reject evidence of skepticism without supporting evidence in the record and then erroneously rejected unexpected results based on a mistaken belief that the Kiribayashi reference wasn't before the examiner. This court's precedents, like in re cyclobenzaprine and others, require more. They require the District Court to give credence to those objective indicia that are proven and to consider them in the obviousness analysis and not to treat them, if you will, as an afterthought. In the case, excuse me, in the court's opinion. We've had cases like Novo and others that have said there's nothing wrong with following the prima facie case approach. And as a panel, we're bound by those cases. So what's the problem if that basic approach is permissible? In respect to the prima facie approach, Judge Dyke, in Novo, for example, even if the prima facie case approach is still followed, the objective indicia have to be given. They're due. In Novo, there was no weighing of secondary indicia against each other as the District Court did here. There's no one's decided any authority to support that. There was no devaluing of an individual objective indicia like long-felt need. Let's take those one at a time. You suggest that the weighing of indicia against each other was something that District Court did. And while there is a stray sentence that suggests that, isn't it pretty clear that he's reaching the conclusion about the weighing of the secondary considerations against the prima facie case of obviousness, giving full credit to whatever factors he found supported the patentee, such as commercial success? I disagree, Your Honor. The paragraph about weighing the secondary considerations is on putting aside the factual errors on skepticism and unexpected results. The only reason given by the court to find Amrin's case on secondary indicia as weak in relation to the prima facie case was that they were outweighed. The ones that Amrin proved were outweighed by the ones that defendants succeeded in showing that Amrin didn't prove according to the court. That's the only reason given by the court. That's not what the case law allows in terms of weighing with respect to the prima facie approach of using secondary indicia. Those secondary indicia are used to see whether or not it's a check, to see whether or not the prima facie case is correct and not as something to be weighed against each other. When someone presents evidence of secondary indicia, if they prove some and don't prove others, you don't weigh those against each other. That's clearly what the district court did. The district court also... Counselor, this is Judge Urena. Your position, as I understand it, is that the court reached a legal conclusion of obviousness before it turned to the objective indicia. Is that correct? That is correct. Okay. Point us down in the record, court, your best source for that proposition. I think you can look, Judge Urena, at A... Let me get to it here. There's multiple places, actually. At A57, right under the very first line of the obviousness analysis, it says as an initial matter, the court is persuaded the defendants presented clear and convincing evidence at trial, that all asserted claims are invalid as obviousness. And then, and only then, goes into the... As an initial matter. Initial matter would seem to be a reference to the prima facie case. And your honor, it might be, if there was then consideration. If the consideration of the prima facie case didn't then bleed into the consideration of the objective indicia. I point you to our argument about skepticism, for example. The consideration of skepticism by the court, it's a clear example, where the court's prima facie view that Morey taught or was enough to teach the use of this compound in severe hypertriglyceridemia meant that the experts who had expressed skepticism couldn't possibly have been aware of Morey because it was inconsistent with Morey. That's allowing the prima facie case, the conclusion to bleed into the consideration of the secondary indicia and showing that the long felt need, the district court clearly in considering the long felt need, discounted it because the court had found a prima facie case. At page A67, the court says, and in finding a long felt need, the court says, thus, the asserted claims represent an improvement, albeit a prima facie obvious one over the prior art. The long felt need is supposed to cause the court to question whether or not the prima facie case is correct, not as a somehow undercut the finding of long felt need. In addition, I think the other aspect of this, if you look at the opinion, is the finding, excuse me, I want to look at A, if I find it right, at A61, the court talks about the prima facie case as defendants having met their clear and convincing evidence, Bert, and some having found that defendants met their clear and convincing evidence at A61 to prove their prima facie obvious case at trial, the court turns to at what point did the court reach the legal conclusion of obviousness? Is it rightfully established what is a prima facie case, or did it look at the entire evidence that was before it? In our case, the district court reached its conclusion of obviousness. No, in Novo. Oh, in Novo. In Novo, I think the issue, in Novo, the court used the prima facie case, as I recall Novo, the court used a strong prima facie case kind of rubric and then used the secondary considerations to see whether or not they could overcome the prima facie case. I think that was the rubric used in the Novo case. And in this case, that rubric wasn't used. There's no indication in the opinion that the district court found this to be a strong prima facie case. It went through the prima facie case and said defendants had met their burden and then and only then went to the secondary indicia. Does that answer your question, Judge Reynaud? Yes, enough anyway. Thank you. You're welcome. You're welcome. And I would also encourage the court with respect to the secondary indicia to look at how that, I mentioned it before, but I'll mention it again, how the consideration of the prima facie case bled into the secondary indicia and that there's no, that's not how it's supposed to work. It's supposed to be the opposite, right? I just talked about the long felt need, but again, the skepticism, skepticism is often called powerful evidence of non-obviousness. And this is on the direct point. This is on the precise point of obviousness from defendants that persons of skill would have had a reasonable expectation that LDLC would not go up with EPA. Ameren hired a panel of experts to consider its clinical trials in 2008. Those experts, one of the main comments they gave was that, that the LDLC is likely to go up as it does with all these therapies. And then the district court rejected that as saying, well, that's inconsistent with what Maury teaches, according to the district court as bleeding over of that finding into the consideration of skepticism is improper and shows, improves to the extent you have any question about rhetoric or semantics of the district court's opinion. It shows how the district court- I don't understand exactly what you're saying. I mean, at page 69, the district court said that he found weak evidence of secondary considerations, which didn't outweigh the prima facie case of obviousness. So he certainly considered the secondary factors in weighing them against the prima facie case. And the fact that he mentioned evidence, which is relevant to secondary considerations in connection with the prima facie case and perhaps vice versa, I don't understand what's the matter with that. I mean, there may be evidence which could be relevant to, to each of those inquiries so that you necessarily have some overlap. I agree as a, as a overall manner, Judge Teich. And first off, I would remind, I just want to remind the court that the finding that the showing was weak was based on the impermissible weighing of the secondary indicia against each other. And while I prima facie case and the finding of secondary indicia in consideration of skepticism, the reason for rejecting the skepticism at page 68 was that the experts view that LDLC is likely to go up as it does with virtually all these therapies was it doesn't appear to account for Morrie because the district court had found that Morrie taught, according to the district court, that it wouldn't go up. And so the district court found that, that the finding on its prima facie case bled into it. And it disregarded the fact that the experts were aware of Morrie. Well, just the experts knew about Morrie. And so this was a finding sort of shaped, if you will, it's in a clear error based on the fact that the experts were aware of Morrie and also shows the bleeding over of the prima facie case. It's an error to consider whether the experts were aware of this aspect of Morrie. How's that? No, Your Honor, that's not what I'm saying. I'm saying it's an error. It's not an error to consider whether the experts were aware of Morrie. It's an error to find that they weren't when they were. That's a clear error. But it's an error to use the conclusion that the experts, excuse me, the conclusion that Morrie taught, according to the district court, no LDLC lowering in severe ATG population is somehow undercutting the skepticism, if you will. Saying, well, the experts expressed skepticism as to whether LDLC would go up. I find that the prior art Morrie teaches that it won't. So therefore, the expert view doesn't account to Morrie. That's what the district court did. And that shows the bleeding over in the other ways I described of that finding, that the fact that the district court found obviousness first and then went to analyze the secondary indicia. All right. I think we're out of time unless my colleagues have further questions. Are there any further questions here? No. Hearing none, Mr. Senator, we'll give you two minutes for rebuttal, and we'll hear from Mr. Klein. Thank you, Your Honor. May it please the court, Charles Klein for the defendants. Ameren's appeal is challenging a ruling that the district court never even made. According to Ameren, the court reached an ultimate conclusion of obviousness, ultimate conclusion of obviousness before addressing secondary considerations. But that is not what happened. We heard some of that in the colloquy already, but that's just not what happened. The court found prima facie obviousness was very careful to make it clear that the court was finding only prima facie obviousness, cited the relevant standards, then addressed secondary considerations, and then and only then reached the ultimate obviousness conclusion. And as I believe it was Judge Dyk who quoted that conclusion, I just want to quote it again because I think it is entirely consistent with Novo Nordisk and the many other cases that have discussed this type of issue before. The conclusion is, quote, for the reasons discussed above, in view of all four gram factors, including alleged secondary considerations, defendants have proven by clear and convincing evidence that all asserted claims are invalid as obvious under 35 U.S.C. section 103. That was the ultimate conclusion on the penultimate page of the decision, page 69. And that is a conclusion that Ameren completely ignored in both of its briefs, never once grappling with that conclusion. The Novo Nordisk case and the other cases from this court, post-Novo Nordisk, got Ameren's lead argument in this case and defeats its hindsight theme. This case, there are no legal issues. There are no legitimate legal issues to address in this case. This is a clear error appeal based on a classic battle of the experts, seven days of trial, 70 pages of extensive analysis and fact-finding in the decision. And all the fact-findings are supported by the record and entitled to considerable deference. This court should affirm. We didn't get too much into the underlying facts and what was taught in the prior art, but I just want to highlight a few facts that really are undisputed and certainly support the trial court's findings in this case. One, the prior art actually used pure EPA to reduce triglycerides. The prior art used the claimed dose, four grams per day to reduce triglycerides. And most importantly, the prior art uniformly, without exception, when discussing the effect of pure EPA on LDL, said it doesn't increase LDL or doesn't statistically significantly increase LDL. Every time. Ameren's entire argument for clear error is based on an analogous teaching away type theory. There is no actual teaching away. There is no teaching away theory with regard to prior art with regard to purified EPA. Instead, Ameren is advancing a teaching way by analogy theory saying that skilled artisans would have looked by analogy to other compounds such as fibrates. No one did that in the prior art. No one when assessing LDL effects of purified EPA looked at fibrates. No one even suspected that LDL for pure EPA would increase once you get above 500. And the Hayashi reference specifically tested LDL up to 400. The study included at least one patient over 500. And the broad conclusion of that reference was that purified EPA does not increase LDL. So there was ample support for all of the court's findings. With regard to the skepticism point that counsel raised, the court on page 69 of the appendix cited the Pharma STEM therapeutics case, which held that it discounted testimony expressing surprise where there was no indication that either the declarant or members of his research group were previously aware of the prior art references that laid the groundwork for the inventor's experiments. Putting aside the fact that the evidence of skepticism here is incredibly weak, we're talking about the notes of one of the inventors that purportedly is characterizing a statement by one of the experts retained by Ameren. Even putting that aside, Ameren had the burden of production and there's no evidence that the person who made this statement was aware of Mori's teachings. In its brief, Ameren points to the fact that Mori was cited in the materials given to the experts, but did the expert read the materials? Did the materials don't necessarily discuss the teachings of Mori? Did the person who purportedly said this actually read Mori? Was the person aware of the Hayashi teaching? The skepticism point is not persuasive and certainly doesn't constitute clear error. I have no other affirmative points to make, and unless there are further questions, I will submit. Okay, hearing no further questions, thank you, Mr. Klein. Mr. Singer, you have two minutes. I'll just respond as to the point about the other drugs. The other drugs were clearly in the record compared with the fatty acids. These drugs were considered together by McKinney and the Bayes reference, to which defendants have had no response, which the district court did not cite in its opinion, considering the phenomenon of LDL-C going up in patients with severe hypertriglyceridemia and not going up in patients who did have this disease. The evidence on that is essentially unrebutted, that the prior art at the time of the invention looked at those other drugs and didn't make the extrapolation that the district court made. That is, on the factual side, the error that we've pointed to. With respect to final point on the secondary indicia, with respect to the ultimate conclusion that defendants that say that we didn't grapple it, the district court talks about in its ultimate conclusion for the reasons discussed above. The district court is referencing, of course, the prior portions of the opinion in that and the errors made, as we've pointed out, with respect to the secondary indicia, the serious errors. Finally, with respect to one last point, with respect to the weighing of the secondary indicia against each other, I would urge the court to look at that paragraph on page 69. There is no other basis in the record given for finding that Amarin's case of secondary indicia were weak, other than, as district court said, however, these secondary considerations are outweighed, the ones Amarin proved, by the fact that the court found plaintiffs' other prospered secondary considerations favor defendants. Thus, at best, plaintiffs have presented weak evidence of the existence of secondary considerations, which do not overcome the court's finding. Unless there are any further questions, Your Honor, I will submit. Okay. Thank you, Mr. Singer. Thank you, Mr. Klein. The case is submitted. That concludes our session for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.